UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 3: 11-12-DCR |
| Plaintiff/Respondent, ) | Civil Action No. 3: 12-7233-DCR-EBA |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| KAREN MARIE VANMETER, ) | **AND ORDER** |
| ) | |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Karen Marie VanMeter entered a guilty plea to an information charging her with violating 18 U.S.C. § 501. On December 13, 2011, she was sentenced to a term of imprisonment of twenty-one months, followed by a term of supervised release of three years. This matter is now pending for consideration of VanMeter's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Record No. 23]

Notwithstanding the fact that VanMeter waived the right to collaterally attack her guilty plea and conviction, she argues that she entered into the Plea Agreement containing the waiver provision unknowingly and involuntarily due to ineffective assistance of counsel. The defendant's ineffective assistance of counsel claim arises from a conflict due to an alleged, unwanted sexual encounter with her attorney. However, even if the alleged encounter occurred, VanMeter is still unable to demonstrate prejudice. Additionally, VanMeter's guilty plea was knowing and voluntary and not the result of ineffective assistance of counsel. As a result, the Court will deny the relief sought.

# I.

### A.     The Information and VanMeter's Written Plea Agreement

On August 19, 2011, VanMeter entered a plea of guilty to an one-count Information. The Information charged VanMeter with knowingly forging and counterfeiting United States postage stamps, with the intent to use the forged or counterfeit postage stamps. [Record Nos. 3, 4, 5] A written Plea Agreement was tendered to the Court at the time of the arraignment. [Record Nos. 7, 17] The agreement outlined the elements the United States would be required to prove to obtain a conviction and set out the factual basis for the defendant's guilty plea. In relevant part, VanMeter admitted the following:

> 3. . . .  (a)  The Defendant operated two online businesses, both of which were involved in the selling of baking and cake making supplies. As a result of purchases through these businesses, the Defendant would ship products from the business using online postage meter stamps from the United States Postal Service.
>
> (b)  From in or about January 2010, and continuing through in or about June, 2011, the Defendant forged or counterfeited postage meter stamp labels from her residence in Shelby County, in the Eastern District of Kentucky. The Defendant used these forged or counterfeit postage meter labels to ship products bought through her businesses. The Defendant created the forged or counterfeited postage meter labels in one of two ways: by altering the amount of postage weight purchased to reflect a greater amount than was actually purchased or by reusing authentic postage stamp labels by cutting and pasting a new customer's name, address, and delivery confirmation over the existing information on a previously used label.
>
> (c)  The Defendant admits that she knowingly and intentionally forged or counterfeited multiple packages in this fashion during the time period alleged in the Information and that the total loss amount to the United States Post Office was $180,000.

[Record No. 17 ¶ 3]

In paragraph 8, VanMeter agreed to waive "the right to appeal and right to attack collaterally the guilty plea, conviction, and sentence." [*Id*. ¶ 8] In addition, the parties made non-binding recommendations to the Court regarding calculation of VanMeter's non-binding guideline range for imprisonment. [*Id.* ¶ 5] This included a recommendation that the Base Offense Level would be increased ten levels because the loss amount was between $120,000.00, and $200,000.00. [*Id.*] Further, a recommendation was made that restitution be imposed in the amount of $180,000.00. [*Id.*]

### B. VanMeter's Presentence Investigation Report and Judgment

The Offense Conduct portion of the Presentence Investigation Report ("PSR") outlines additional factual information relevant to calculating the defendant's guideline range for imprisonment and the amount of restitution owed to the United States Postal Service. The PSR states, in part:

> 6. In May 2010, the United States Postal Inspection Service ("USPIS") was alerted to Karen Packer VanMeter (VanMeter) because she was altering legitimate shipping labels and mailing several packages using the same label. VanMeter would alter the shipping information to the addressee, but failed to alter the tracking number. As a result, multiple mail pieces were associated with one delivery confirmation number, which was not legitimately possible.
>
> 7. On May 18, 2010, VanMeter was interviewed by postal inspectors. She was advised that what she was doing was illegal and she signed a Voluntary Discontinuance Agreement stating that she would stop the activity. The agreement also included language that if she failed to cease her activity she would be subject to criminal and civil liability.
>
> 8. In January 2011, the USPIS was alerted that a package containing an altered postage label was sent by Bluegrass Hobbies and Customcakesupply.com. Records revealed that the principal in both businesses was VanMeter.

\*\*   \*\*   \*\*

13. VanMeter admitted to inspectors that she had been counterfeiting postage labels on and off for approximately one and a half years. The defendant indicated that she can print the postage label through PayPal when she clicks payment. The option to select postage, address and pay now appear. Once those items are selected, a mailing label will then pop-up and there is an option to choose multiple labels. VanMeter would then use that label and copy other information into that label and use it to mail to several different people. The defendant indicated that she was unaware of the total amount of money she failed to pay in postage.

14. . . . PayPal records revealed that VanMeter had received $1,472,207.30 since September 28, 2006.

15. . . . [D]uring the investigation, the USPIS reviewed mailed parcels for 17 days, two of which nothing was mailed, and were able to ascertain a daily average loss of $600.55. To extrapolate the loss in this case the probation office used a 20 day month times the 18 month time frame to achieve an estimated loss of $216,198 . . .

16. The plea agreement in this case estimates the loss at approximately $180,00, which is approximately 300 days . . . the use of $180,000 amount is recommended.

[*See* PSR ¶¶ 6-8, 13-16.]

The PSR was disclosed to the parties prior to the December 13, 2011 sentencing hearing. On November 18, 2011, VanMeter's counsel filed a letter detailing points of clarification to the original PSR. [*See* Addendum to PSR.] The Probation Office amended the PSR to incorporate these points of clarification. [*See* PSR, p. 15.] The Probation Officer responsible for preparing the PSR recommended that the Court apply a Total Offense Level of 18, which included a ten-level increase because the loss amount was more than $120,000.00 but not greater than $200,000.00, and an additional two-level increase because the defendant possessed a counterfeiting device or materials used for counterfeiting. However, the defendant's Total

Offense Level was adjusted to include a three-level decrease for acceptance of responsibility. This calculation was consistent with the parties' earlier recommendations as outlined in the Plea Agreement. VanMeter's attorney did not object to those calculations.

The defendant's non-binding range for imprisonment was determined to be twenty-seven to thirty-three months. However, following allocution, the Court determined that a six-month downward variance from the bottom of the defendant's non-binding guideline range was appropriate. As a result, VanMeter was sentenced to a total term of incarceration of twenty-one months, followed by a term of supervised release of three years. [*See* Record Nos. 15, 16 and Record No. 25, pp. 17, 19-20.] Additionally, the Court ordered the defendant to pay restitution of $180,000.00. [Record No. 16, p. 5; Record No. 25, p. 21] The Court's Judgment reflected the applicable statutory factors of 18 U.S.C. § 3553.

      **C.**     **The March 4, 2013 Evidentiary Hearing**

On March 4, 2013, United States Magistrate Judge Edward B. Atkins conducted an evidentiary hearing regarding the claims raised in VanMeter's § 2255 motion. Both VanMeter and her former attorney testified. During this hearing, VanMeter recounted the alleged, unwanted sexual encounter with her counsel occurring June 27, 2011. VanMeter then asserted that her attorney did not disclose to her the government's evidence or calculations regarding the amount of loss attributed to her illegal actions. Additionally, the defendant testified that her original attorney had not reviewed with her the Plea Agreement until immediately before the arraignment and guilty plea. Further VanMeter asserted that she was not aware of the

$216,198.00 loss estimate contained in paragraph 15 of her PSR and that she was only told to review the personal information section.[1]

VanMeter's former attorney, Dan Carman, denied each of VanMeter's accounts. He also provided the Court with a copy of his standard fee agreement. This agreement stated in part that: "[t]he outcome of . . . litigation is subject to factors which cannot always be foreseen. It is understood that no promise[] or guarantee to Client has been made concerning the outcome of this representation. Nothing herein shall be construed as such a promise and guarantee." [See Exhibit A, during the March 4, 2013 Evidentiary Hearing.] Additionally, Carman produced a Voluntary Discontinuance Agreement dated May 18, 2010, signed by VanMeter.[2] He testified that he met with VanMeter on at least seven different occasions and that he reviewed the amount of loss information provided by VanMeter and the government. Carman also testified that, while he calculated an amount of loss of $171,000.00,[3] the Government provided evidence and told him it could prove at least $200,000.00 in losses attributable to VanMeter. Thus, he was only

---

[1] While VanMeter contends she was instructed to only review the "personal information" contained in the PSR, Carman filed a clarification with the United Sates Probation Officer that VanMeter did not recall utilizing certain names when doing business on eBay, as set out in paragraph 14 of the PSR. [*See* Addendum to PSR.] The amount of loss calculation of $216,198.00 and recommendation of $180,000.00 amount of loss is contained in paragraphs 15 and 16 of the PSR and is on the same page. [*See* PSR, p. 5.] Thus, the information was certainly available for review if the defendant cared to look at it.

[2] This agreement stated that on or about May 14, 2010, USPIS interviewed VanMeter and she agreed to cease producing and using forged and counterfeited postage. She was also informed that these actions are illegal and that continued participation in duplicate label mailings would expose her to potential criminal or civil liability. This agreement was signed on May 18, 2010. [*See* Exhibit B, entered into Record of March 4, 2013 Evidentiary Hearing.]

[3] The breakdown of Carman's calculation of this figure is contained in an e-mail exchange concerning the negotiation of the amount of loss with the government. [*See* Record No. 33-1, p. 1.]

able to negotiate a plea based on a loss amount of $180,000.00. Carman also denied VanMeter's accusation of the alleged unwanted sexual contact.

### D. The Attorney's Affidavit

The government argues that VanMeter is precluded from collaterally attacking her guilty plea due to the waiver provision of the Plea Agreement. [Record No. 31, pp. 2-6] Additionally, it submitted Carman's affidavit in support of its position that the defendant was not provided ineffective assistance during the criminal proceeding. In relevant part, the affidavit denies the allegations of a sexual relationship with VanMeter. [Record No. 31-1] Additionally, counsel asserts that he: (i) performed an adequate investigation into the amount of loss, including review of the materials provided to him by the defendant; (ii) fully explained the terms of the plea agreement and guideline calculations prior to VanMeter's guilty plea; (iii) never threatened nor made any promises concerning incarceration; and (iv) never forced VanMeter to plead guilty. [*Id.*, pp. 1-2]

### E. VanMeter's § 2255 Motion

VanMeter did not file a direct appeal. However, on August 24, 2012, she filed the present motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Record No. 23] VanMeter argues that her guilty plea was not a knowing or voluntary plea due to ineffective assistance of counsel. As previously noted, the defendant alleges that her attorney forced her to participate in an unwanted sexual act while he was representing her. She contends that, as a result, Carman was laboring under a conflict of interest, which prevented him from providing effective assistance of counsel. Specifically, VanMeter argues that her attorney's conflict caused

him to: (i) fail to properly and adequately investigate the actual loss, which she alleges to have been $3,773.54;[4] (ii) fail to explain that her guideline sentencing range would be increased based upon the amount of loss; and (iii) improperly promise her that she would not be incarcerated if she accepted the restitution amount of $180,000.00 and did not ask any questions during her sentencing or arraignment. [Record Nos. 23, 34]

## II.

VanMeter's § 2255 motion was referred to a United States Magistrate Judge for initial review in accordance with 28 U.S.C. § 636(b)(1)(B). On April 9, 2013, United States Magistrate Judge Edward B. Atkins issued his Report and Recommendation regarding the motion. [Record No. 23] The magistrate judge recommended that VanMeter's motion be dismissed because she failed to demonstrate that her attorney suffered from any actual and significant conflict or impairment of interest which adversely affected his performance. [Record No. 48, pp. 13-14] Further, Magistrate Judge Atkins found that VanMeter's evidence of loss is not sufficient to challenge the government's evidence on this point. Consequently, she is unable to show prejudice resulting from any alleged conflict of interest. [*Id.*, pp. 14-15]

While this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which an objection is made, 28 U.S.C. § 636(b)(1)(c), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal

---

[4] While VanMeter contends that the amount of loss was only about $3,000.00, in an e-mail exchanged with Carman she states an estimate of loss of $3,773.54 for the use of first class postage that should have been priority postage. [*See* Record No. 31-4; Record No. 34-2, p. 2.] This same e-mail also contains estimates of loss for international orders to be $11,080.00, and an estimate of loss for international wholesale orders of $29,700.00.

conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Moreover, a party who fails to file objections to a Magistrate Judge's proposed findings of fact and recommendation waives the right to appeal. *See United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Nevertheless, having examined the record and having made a *de novo* determination, the Court agrees with the magistrate judge's recommendations concerning the issues raised by VanMeter's § 2255 motion. Additionally, VanMeter has not shown that a Certificate of Appealability should issue.[5]

When asserting a claim of ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice by a preponderance of the evidence. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To establish first prong of the *Strickland* test, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Under the second prong of the *Strickland* test, a defendant is required to demonstrate that "but for" her counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. However, when a claim is raised in the context of a plea agreement, the petitioner must demonstrate that "but for" her

---

5  A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the requisite "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2), "a petitioner who has been denied relief in a district court 'must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (emphasis and brackets in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Here, VanMeter has not made a substantial showing of a denial of a constitutional right. Likewise, she has not demonstrated that the issues she now seeks to raise are debatable among jurists of reason or that the questions are adequate to deserve encouragement to proceed further.

counsel's errors, she "'would not have pleaded guilty and instead would have insisted on going to trial.'" *United States v. Wynn*, 663 F.3d 847, 851 (6th Cir. 2011) (quoting *Short v. United States*, 471 F.3d 686, 691-92 (6th Cir. 2006)).

Magistrate Judge Atkins correctly concluded that, *even if* the Court were to assume that a sexual encounter occurred, and *even if* the Court were to conclude that these actions rendered counsel's performance objectively unreasonable, VanMeter has not demonstrated prejudice relating to her decision to plead guilty. As noted above, a guilty plea is valid if entered voluntarily and intelligently. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). In making this determination the Court examines the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 749 (1970); *United States v. Ko*, 485 F. App'x 102, 104 (6th Cir. 2012). Under the facts presented relating to the defendant's guilty plea, the Court finds the waiver provision to be valid and binding.

On August 19, 2011, VanMeter appeared before the Court for the purpose of filing an Information, Waiver of Indictment, and plea of guilty to the Information. At the beginning of the hearing, VanMeter, was placed under oath. [Record No. 30, pp. 2-3] The Court then confirmed that she was competent, not impaired, and able to enter a plea. [*Id.*, pp. 6-8] VanMeter confirmed that she had received and reviewed the Information with her attorney, and that she understood the content and purpose of the Information. [*Id.*, pp. 8-9] The defendant also stated that she understood she could require the government to proceed with an Indictment by a grand jury. However, she voluntarily chose the filing of an Information. [*Id.*, pp. 9-11]

VanMeter also confirmed that she had thoroughly reviewed and understood the Plea Agreement and Sealed Supplement. [*Id.*, pp.11-12] Counsel for the government and the Court then proceeded to thoroughly review the contents of the Plea Agreement. This consisted of the Assistant United States Attorney ("AUSA") discussing: (i) the elements of the offense charged; (ii) the factual basis for the guilty plea; (iii) potential penalties; (iv) the parties' non-binding recommendations regarding guideline calculations; (v) the waiver provision of the agreement; and (vi) the acknowledgment that both the defendant and her attorney understand the agreement and that it has been fully explained to the defendant. [*Id.*, pp. 12-15] Both VanMeter and her counsel confirmed that the Plea Agreement had been properly summarized by the Assistant United States Attorney. [*Id.*, p. 15] The Court also confirmed that the written Plea Agreement contained all of the terms of the parties' agreement. [*Id.*] VanMeter again confirmed that no threats or other promises had been made to induce her to enter into the agreement with the Government. [*Id.*, p. 16] Additionally, she confirmed that no one had told her that she would receive a certain sentence in exchange for entering a plea of guilty. [*Id.*]

The Court also reviewed the penalty provisions contained in the Plea Agreement, the manner in which the United States Sentencing Guidelines would be used to calculate a non-binding guideline range for imprisonment, and the statutory factors the Court would consider in imposing a sentence. [*Id.*, pp. 16-20] The Court specifically addressed the possibility that VanMeter could be required to make restitution. [*Id.*, p. 17] Further, the Court addressed the amount of loss calculation:

> THE COURT: And you understand that based upon the loss amount that's set forth in the Plea Agreement that that amount could be $180,000.00 but at this time

>the Court can't make a final determination to the exact amount? You do understand that?
>
>THE DEFENDANT: Yes, I do.
>
> **   **   **
>
>THE COURT: . . . The Sentencing Guidelines are based upon two primary factors. First is the offense level for the crime that's been charged together with any adjustments, and second would be any criminal history that you might have.
>
>Those two factors taken together determine what's called a guideline range. I find out about those factors and about the guideline range from a presentence report. That's a report that will be prepared by the probation officer. After the report has been prepared, it will be shown to you and to your attorney and to the attorney for the United States. You will all have a chance to review the report and through your attorney you'll have a chance to file objections to anything you might disagree with. . . . But do you understand that until that process takes place, it would be impossible for the Court or for your attorney to know exactly what the guideline range would be in your case? Has all that been explained to you?
>
>THE DEFENDANT: Yes, it has.

[*Id.* pp. 17-19]

The Court then addressed the waiver language of the Plea Agreement. Specifically, the Court asked VanMeter if she had read, discussed with her attorney, and understood this waiver language. She responded affirmatively. [*Id.*, p. 20]

>THE COURT: Now, additionally, in paragraph 8, you waive the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence. And you understand that you're waiving or giving up those rights; correct?
>
>THE DEFENDANT: Yes, I do.
>
>THE COURT: Now, do you understand that when you waive or give up the right to collaterally attack something that means you're giving up the right to file a separate lawsuit to challenge it, sometimes referred to as a habeas motion or a habeas petition? You understand that?
>
>THE DEFENDANT: Yes, I do.

[*Id.,* pp. 20-21]

Following this discussion, the Court confirmed that VanMeter understood that, by agreeing to this language, she would still be bound to her plea agreement even if the sentence imposed was greater than what she expected. [*Id.*, p. 21] The Court also requested that VanMeter describe in her own words the conduct that supported her guilty plea. [*Id.*, pp. 24-25] In part, VanMeter then admitted that the allegations contained in her plea agreement were true and that if the matter proceeded to trial the Government could prove each element of the crime beyond a reasonable doubt. [*Id*., pp. 25-26] In summary, VanMeter unequivocally and repeatedly testified that she understood the rights she was giving up by pleading guilty as well as the contents of her Plea Agreement, that she was actually guilty of the crime charged, and that, in exchange for concessions made by the government, she was waiving her right to appeal and collaterally attack her sentence.

During the December 13, 2011, sentencing hearing, the Court reviewed the guideline calculations and loss amount outlined in the PSR. This included the parties' agreement to a ten-level increase due to a loss amount of $180,000.00. [Record No. 25, p. 4] During this hearing, VanMeter directly addressed the Court, stating, in part:

> THE DEFENDANT: Your Honor, I want to express my sincerest apologies to you, Your Honor, this Court, the United States Postal Service, the taxpaying public, and my family. I realize how wrong I was, that postal duplication is a very serious crime. I am extremely ashamed and remorseful of my actions, to say nothing of how I hurt my family. I admit that I was wrong and I accept full responsibility for my behavior.
> . . . .
>
> I also understand that not only should I be required to repay the Postal Service, but pay extra for what I have done. In that regard, I think it would be appropriate

> for the Court to impose a fine in addition to my restitution, I am allowed — if I am allowed to serve my sentence out of confinement so that I have to feel the sting of my behavior for years to come.

[*Id.*, pp. 8, 11]

As outlined above, during the arraignment hearing on August 19, 2011, VanMeter indicated that she had reviewed the Plea Agreement with her attorney and understood its contents.  Moreover, she confirmed that she fully understood the import of the waiver provision contained in paragraph 8.  She did not contest or disagree with the amount-of-loss figure which was included in the parties' recommendation to the Court.  Likewise, she did not object prior to the sentencing hearing to the application of the ten-level enhancement contained in the PSR.  And she did not object during the sentencing hearing when the Court adopted the findings contained in the PSR.  Instead, she took full responsibility for her actions and accepted the amount of loss.

As Magistrate Judge Atkins correctly noted, "'[s]olemn declarations in open court carry a strong presumption of verity, and the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the records are wholly incredible.'"  [Record No. 48, p. 13 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)0; *see also United States v. Rennick*, 219 F. App'x 486, 489 (6th Cir. 2007).]  The Court agrees with Magistrate Judge Atkins' determination that VanMeter's own admissions at the arraignment, her signed plea agreement, and the signed affidavit of her counsel all establish that VanMeter was not forced to enter into her plea agreement, that she understood the contents of the agreement, and the rights she was giving up by entering into the agreement.  She

stated under oath multiple times that she had prepared and consulted with her counsel, and at no point indicated that she was dissatisfied with his representation.

Magistrate Judge Atkins also correctly determined that VanMeter's claims of prejudice resulting from counsel's alleged conflict of interest and inadequate investigation concerning the loss amount to be meritless. VanMeter is unable to demonstrate that, absent Carman's alleged deficient performance, the amount of loss would have been significantly lower than the agreed upon amount ($180,000.00). [Record No. 48, pp. 13-14] Simply put, VanMeter's arguments regarding the amount of loss attributable to her actions is insufficient to overcome or reasonably challenge the Government's evidence regarding this issue.

### III.

As outlined above, VanMeter has not demonstrated that she is entitled to collateral relief under 28 U.S.C. § 2255. Accordingly, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation of Magistrate Judge Edward B. Atkins [Record No. 48] is **ADOPTED** and **INCORPORATED** by reference.

2. Defendant VanMeter's motion to vacate, set aside, or correct her sentence [Record No. 23] is **DENIED** and this matter is **DISMISSED** from the Court's docket.

3. A Certificate of Appealability shall not issue.

4. Defendant VanMeter's *Ex Parte* Motion [Record No. 40] is **DENIED** as moot.

This 3rd day of May, 2013.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge